Good morning. I'm here on my unopposed appeal on a fee application. I wanted to bring to the court's attention there was a case I found that I did not cite. It's a 10th Circuit bankruptcy appellate panel case, In Re Edward Taha, T-A-H-A-H. It's at 3.30, Bankruptcy Reporter, 777. I believe this represents my position, particularly the concurring opinion that these local guidelines cannot alter the provisions of the Bankruptcy Code, particularly Section 330. Let me ask you something, if I may. It's a peculiar construct that happened. If I got it right, and I may not have, that's why I want to lay it out for you. It seems to me that basically what happened was kind of a two-step process. I mean, you submitted a no-look application. Yes. That was, without a look, approved as part of the confirmation of the plan. After that, you submitted a look-at-it application for fees that related to the entire proceeding. That is, they weren't for fees that were incurred after the no-look application had been submitted. Well, the application has to justify the base fees previously approved. You kind of get to treat that as a credit or a payment that you received. It was for the look-at application was not for fees that were incurred after plan confirmation and after the award of no-look fees. Is that right? It included the entire case. It included the entire proceeding. And that was the practice at that time. Maybe. Here's my question. Having submitted the no-look application, which effectively represents to the bankruptcy court that those are the reasonable fees for the services performed to date, and that having been approved, and an application for fees covering the entire proceeding having been submitted after that, why shouldn't the bankruptcy court at that point then say, wait a minute, I'm going to go back now and assess the reasonableness of the fees as a whole? Well, they could. Why not? They could. They could. Okay. So he did that. Well. So then looking at the fees as a whole, which was okay, the bankruptcy court says, well, as represented, in effect, the no-look application, those were reasonable fees for the basic core services that were performed. But now you want me to itemize them. There was no work done on vehicles that was worth anything. And so I'll give you the money for the stay, because that was beyond, above and beyond. Well, that's not really true. I mean, basically, there's a huge number of these fee cases that Judge Grube did. He always approved my fees in these supplemental applications, and then he was overturned in a case I brought here in Ray Dunbar, and then all of a sudden all my cases were being submitted and I wasn't getting any fee orders for nine months or a year. In this case, I felt this was particularly ridiculous to even go back and say the presumptive fees of $200 for the car weren't earned. There was no problem. This is a case where the debtor had a $30,000 car loan, which I crammed down to $20,000 in a confirmed plan. I don't know. I mean, the judge in some of these opinions talk about extraordinary fees. Well, what is an ordinary Chapter 13? There's no standard established for that. What's happened since this appeal was filed is San Jose has gone from a very low fee schedule to a very generous fee schedule, the highest in the Bay Area. The base case is now $2,750, $700 if you have a car, $700 if you have a tax problem, even if it's only a $300 tax problem. So the game now to make a lot of money is not take difficult cases. This was a difficult case. This is a Samoan immigrant family. He had a daughter who was a problem, called the police on her father. He actually went to jail for six weeks. We're trying to save their house. It's more difficult to communicate with people that are in jail. I probably could have explained this to the judge if every time I set a hearing on a fee application, he hadn't taken it under submission, never had a chance to appear in court and discuss this. The problem I have with the guidelines, the guidelines are fine. I understand the crush of trying to manage hundreds of bankruptcy cases. We have a very entrepreneurial county in Santa Clara County. We get a lot of high-earner people in Chapter 13, a lot of lawyers, a lot of medical doctors. And so I understand that those guidelines are an appropriate way to handle a great majority of the cases. But they shouldn't be allowed to alter the bankruptcy code. Section 330 says we're supposed to be adequately compensated. Help me understand with respect to the statute. I'm hearing your story, which is an interesting story with some sympathetic aspects to it, but now what I'm after is help me understand your argument with respect to the statute. What's wrong with the no-look? What's wrong with reopening once you submit a detailed application to sort of say, okay, well, we're not doing no-look anymore and I'll take some off and I'll add some depending on what happened? Give me your legal argument. Okay. The legal argument is there's no such thing as an extraordinary standard. It's not in 330. So the silliness that's evolved is that the guidelines say, well, this should handle an ordinary case. Now, in San Jose, these numbers are based on the practice of a man who hasn't had a contested hearing in three years. None. And he does a fine job and he advocates well for the consumer debtor bar. I have nothing against the way we do these things, but it certainly did not address the type of practice I had where I was handling probably 80 percent of the cases involving foreclosures. But I'm not yet to the point of the legal argument. The legal argument is there's nothing in 330 that says you have to have extraordinary services to be compensated. I mean, are some hours a reasonable number of hours times a reasonable hourly rate should be your fee. I don't see any basis for saying, oh, it has to be an extraordinary case that you get the low start. Let me translate it into other language, which I think also accurately characterizes what's going on. And then let's hear your argument again. As I look at the as I see this no-look fee application system, it's the presumptive fee. And if you want to go with a presumptive fee, you just file and no questions asked, you get it. If, on the other hand, you think this is a case in which the presumptive fee compensates you at too low a level, you are allowed to submit a detailed fee application. And the judge says, OK, now let me see what you actually spent. But we all understand that this is the presumptive fee, and I'm going to need evidence that this is what you actually say in terms of your hours and so on that you actually did it. What's wrong with that? Or what's wrong with my description of it? If my description is right, what's wrong with that as a matter of. Well, the description that you look at. First of all, everybody gets the presumptive fee in San Jose. This is not an opt out county like Sacramento. Sacramento, you you choose. You say I'll take the presumptive fee or I'll opt out and I'll do a fee application. In San Jose, the practice, particularly at this time, was everybody gets the presumptive fee. They still do. And. Well, unless you file for a. Unless you opt out. I mean, which is what you did. Right. No, I had the presumptive fee and I performed those services. I was. But then you file a separate subsequent fee application. The judge reopens and gives you a little more money for precisely the same services. You've already gotten your presumptive fee. Well, he actually he actually took some away and he gave some more. He added out a little over 300 bucks. Well, three hundred dollars. But he took away from the presumptive fee. Essentially, you took some away and he added other. But he reopened another. He's OK. You want me to have a detailed look at it? I will. Right. But what's wrong with that? Now, I understand you may object to what he did in a specific case. But I'm asking what's wrong with that in terms of concept. Well, the thing that's wrong with it in terms of concept is not complying with the bankruptcy code. Because in what respect does it violate the bankruptcy code? Because it's not compensation based on a reasonable number of hours times a reasonable hourly rate. I had reduced my hourly rate to 250 dollars an hour from the 285. He had been approving because at a hearing he stated that the 250 dollars an hour was going to be the maximum rate for any chapter 13 bankruptcy petitioner. And he had me and two other people he felt could bill at that rate. So if 250 is a reasonable hourly rate and it was reasonable for me to have spent that time in the case. And that may be the question. I think we're at shifts passing in the night here because I hear your argument. I think Judge Fletcher does. I hear you saying, look, this case deserved more fees. Which in effect is saying to the judge, this is extraordinary. It doesn't fit the usual model. What I hear the judge saying is, well, these presumptive fees, this no look fee, that's going to cover the time you need for an ordinary case. And he's waiting for you to tell him why this wasn't an ordinary case. At least his order here doesn't reflect that he heard a reason from you as to why a larger fee was reasonable. Because he didn't think it should take more hours than the presumptive fee covers. So Judge Fletcher is trying to ask, in theory, is there something wrong with the system if in fact the lawyer has an opportunity to explain why this case needed more? First of all, I didn't have an opportunity to explain. You had papers. You filed papers where presumably it should have come. There was no hearing. And second of all, I did justify the base fee, the 1400 plus the 200 for the car. That argument I can hear, but that doesn't say why the system itself is flawed. And the argument I've read in your brief is the system itself doesn't comply with the statute. And frankly, I don't understand that. I don't know why the system can't comply with the statute as long as the opportunity is there to explain why a given case required more. Well, I think the Taha case, the concurring opinion, addresses it in more detail. But Section 330 says we're supposed to get reasonable compensation. There's the guidelines are fine if you have a case that is in accordance with what the guidelines were determined under and you accept those as your total fees. When you have a guideline that provides for a certain amount of fees just because someone has a real estate case, that does not adequately compensate you for having to deal with a number of hearings where people are trying to get relief to foreclose on the debtor's house. As I understand the system, you can then say, okay, I don't want to do the no-look system. I want to submit a detailed fee application and I'll tell you how many hours I spent and what I did. And then the judge looks at it and he gives you whatever money the judge thinks is appropriate under the circumstances. And you may have a disagreement with the judge as to the amount he then gives you. But it sounds to me, at least as an abstract system, that it's a defensible system. It's, if operated in that fashion, is that if you're, the guideline fees are to handle the bulk of the administration and then upon a fee application, though, it should be evaluated under the standards of the code, Section 330. It is absolutely silly that they establish extraordinary standard when there's no ordinary standard. Okay. Let me ask this. Are you saying that when you submit the application for full fees, that that then should cancel out the prior approval of the no-look award and, therefore, the entire application should be measured on the Lodestar-Kerr type factors? Is that what you're arguing? I think that's more accurate as far as what the result should be. Because you could have guideline fees that you didn't fully earn and then you, but you might have a very difficult case. You could have a contested hearing on a car or a house valuation to determine a secured lien of the IRS. So how does that differ from what happened except in result? What differed in what happened, I guess, is that once the fee application was filed, it should have been using the Lodestar and the code under 330. The guidelines shouldn't have been used as a measuring stick for each of the tasks. I guess to respond to your questions, what I'm understanding you're asking me is that what happened in this case, the judge said, well, we've determined that $200 is enough to take care of a car. And now that I look at it, I mean, I did take care of the car problem, but, you know, And he said, well, this real estate fee, this should have been enough. You know, they all average out. And I think the lower court in the Tahoe case, the judge said, well, this is one of those cases that should average out. And the problem I have with that is that assumes that this is somehow some kind of a legal aid practice. They were doing deliberately taking loser cases. It says average out because you're going to have some cases with a presumptive fee that don't take that number of hours. And because you're not required to document, take the current schedule, which you described as being more generous. You're going to have cases that won't require $2,700 worth of time. Average out means in some cases you make more. In some cases you make less. It's not purely a legal aid system. You're making more in some cases. But the fees in effect at that time were very low, and it was most attorneys. But that's the challenge you're giving us. You're not giving us a challenge to the amounts. You're giving us a challenge to a presumptive fee system. If the amounts are appropriate, then you appear to have no quarrel with it. Well, in the current system, they're probably overly generous. I guess my challenge is to what is the standard for reviewing a fee application when the fee application is brought in a Chapter 13 case? And in a Chapter 11 case, you know, it's simply the lodestar, the 330. What was the reasonable time? What was the reasonable hourly rate? And we come up with a fee. Why should it be any different in a Chapter 13? Is it just because we've come up with some administrative devices that come up with guidelines? And what happens in this whole system is that people with difficult cases aren't going to get representation. I stopped last year doing, you know, panic foreclosure cases. So sad, too bad. I certainly, you know, do a lot of cases. I don't, you know, there's a theory, I guess, that attorneys are like buses, and anybody who has a token gets to get on and somehow you take all these cases and it'll somehow work out. But I don't think that's a proper way to look at it. Each case has an amount of work and an hourly rate that it should be, if you want it as an applicant, reviewed on that standard. It should be reviewed just like a Chapter 11 case, that what was the reasonable hours and the reasonable rate. Is there anything that precludes you from not filing a no-look application, from doing it based on hours from the very beginning? I'm sorry, I don't understand the question. Well, as I understand it here, you filed what they call a no-look application, basically signed up for the program that gives you a presumptive fee. Could you elect not to put in that submission and simply claim for hours at the end, not getting the quick payment fee? I suppose you could, but San Jose doesn't preclude you from making a fee application if you get the no-look fees. So in San Jose, the guidelines say you can get the no-look fees if you think it's not adequate, and that's in the exhibits, and you can make a fee application. If you've got a case where you say, this system's not going to work for me, so I'm just never going to enter it, is there anything that precludes you from opting out of the no-look fee system for a given case? I think if you didn't – if you decided to do a fee application on all your cases, I don't think you'd be practicing in San Jose very long. I think the local culture would prevent you from opting out of this system. My only – I have a complaint that it's just – the way it was handled is very subjective. There's no basis for an ordinary or extraordinary case in the code. And unless you have any other questions, I stand submitted. I don't think so. Thank you, Mr. Cohn.
judges: Rymer, W. Fletcher, Clifton